2024 IL App (1st) 230638-U

No. 1-23-0638

Order filed November 13, 2024

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 3967 |
| | ) | |
| RACHIDE ANDERSON, | ) | Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court.
Justices Reyes and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The evidence was sufficient to prove defendant guilty of attempted armed robbery where a rational trier of fact could reasonably infer his specific intent to commit armed robbery through his conduct and the surrounding circumstances.

¶ 2    Following a bench trial, defendant Rachide Anderson was found guilty of attempted armed robbery with a weapon other than a firearm, aggravated battery of a merchant, and aggravated battery with a deadly weapon. The trial court merged the aggravated battery counts into the attempted armed robbery count and sentenced defendant to eight years in prison. On appeal,

defendant contends that the evidence was insufficient to prove beyond a reasonable doubt that he had the specific intent to commit armed robbery. We affirm.[1]

¶ 3     Defendant was charged with attempted armed robbery with a weapon other than a firearm (720 ILCS 5/8-4, 18-2(a)(1) (West 2022)), aggravated battery of a merchant (720 ILCS 5/12-3.05(d)(9) (West 2022)), aggravated battery with a deadly weapon (720 ILCS 5/12-3.05(f)(1) (West 2022)), and aggravated battery causing great bodily harm or permanent disability or disfigurement (720 ILCS 5/12-3.05(a)(1) (West 2022)) arising from an incident inside a convenience store at a gas station near the 7600 block of South State Street in Chicago, Illinois.

¶ 4     At trial, Khalad Alsheikh testified that he has felony convictions for aggravated criminal sexual abuse, failure to report change of employment, and failure to report change of address.

¶ 5     On March 15, 2022, Alsheikh was working the overnight shift as a cashier at the store. As security precautions for employees working overnight, the store had a lock on the door that customers used to enter and exit, which only the cashier could unlock via a button, and a separate locked area accessible only by employees.

¶ 6     While in the employees-only area between 1 a.m. and 1:30 a.m., Alsheikh's coworker informed him that defendant was attempting to steal items that had been placed inside a backpack. Alsheikh left the employees-only area and approached defendant carrying a long, slender metal tool used to hang and grab merchandise (grabber). Defendant was attempting to leave through the door, but it was locked. Alsheikh told defendant to give the "stuff" back, and Alsheikh would open the door. Defendant responded, "F*** you, I don't wanna give you my stuff." Alsheikh initially

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

testified that he saw a knife, screwdriver, and tire iron in defendant's hands, but later clarified that he only saw the screwdriver and tire iron.

¶ 7 Defendant then walked to the back of the convenience store and Alsheikh tried to grab defendant's backpack. Defendant returned to the front door, and Alsheikh told defendant to give his "stuff" back. Alsheikh had the grabber to protect himself from defendant, who was trying to attack him and "already had this knife with him."

¶ 8 At some point, defendant said, "I'm finna stab you" while holding a knife. Alsheikh, who had dropped the grabber, grabbed defendant and wrestled with him to try to get his "stuff" back and hold him until police arrived. While Alsheikh was trying to "take [defendant] down," defendant stabbed him with the knife four times and scratched him. Alsheikh got weaker and could not take defendant down on the floor. After defendant stabbed Alsheikh, defendant again went to the back, then returned to the front, and tried, unsuccessfully, to break the glass door with the tire iron. The police arrived and arrested defendant.

¶ 9 Alsheikh went to the hospital where he received staples in his head for the stab wounds. He also had cuts on his arms, neck, and chest.

¶ 10 On cross-examination, Alsheikh stated that he approached defendant with the grabber, waved it at him, and dropped it when he wrestled with defendant. He made physical contact with defendant first, and he realized then that defendant had a knife. Defendant had three weapons at that moment. When asked to confirm that defendant said he was "going to stab" Alsheikh when Alsheikh had his arms around defendant, Alsheikh stated that defendant said it "before [he] had the arm with him."

¶ 11    After the stabbing, Alsheikh stood by the door for several minutes and defendant was not near him. Alsheikh did not instruct his coworker to unlock the door to let defendant exit. At one point after the altercation, Alsheikh followed defendant around the store. Defendant tried to leave again, but Alsheikh did not let him.

¶ 12    On redirect examination, Alsheikh testified that when he first approached defendant at the front door, defendant was using the screwdriver to try to open the door. Defendant was trying to stab Alsheikh when Alsheikh had the grabber and before they wrestled. When defendant said, "finna stab you," Alsheikh understood it to mean that defendant "was trying to very much, you know, do physical, I'm finna stab you."

¶ 13    The incident was captured on surveillance video from inside the store. The video was entered into evidence and included in the record on appeal. In the video, which does not include audio, we observe defendant enter the convenience store and walk through an aisle. He takes merchandise off the shelf, places it in his bag, walks directly to the door, and attempts to exit. Defendant tries to open the door using an object. Meanwhile, Alsheikh walks toward defendant, who is facing the door. As Alsheikh waves the grabber, defendant turns and faces Alsheikh while holding the object, and at moments, pointing it at Alsheikh. Alsheikh and defendant appear to exchange words. Defendant walks around the store and out of frame. Alsheikh follows. Defendant returns in view and approaches the door. Alsheikh is still holding the grabber and defendant is still holding the object. It appears that words are exchanged. Alsheikh drops the grabber, grabs defendant from behind, and they struggle. Defendant strikes Alsheikh in the back of the head, causing Alsheikh to bleed. The two separate and have no further altercations before the police arrive.

¶ 14 Chicago police officers Thomas Kowal and Juan Ceja both testified that on March 15, 2022, at about 1:30 a.m., they responded to the scene. Officer Kowal detained defendant, who admitted to attempting to steal some items and related that he was attacked and used self-defense. The footage of defendant's arrest was published and viewed by the court. Another officer testified that he recovered a knife, tire iron, and screwdriver at the scene.

¶ 15 The court found defendant guilty of attempted armed robbery, aggravated battery of a merchant, and aggravated battery with a deadly weapon and not guilty of aggravated battery causing great bodily harm or permanent disability or disfigurement. The court explained that what began as a retail theft became an attempted armed robbery when defendant tried to take the items and leave without paying by threatening force and subsequently using that force. The court found that the surveillance video corroborated Alsheikh's testimony.

¶ 16 The trial court denied defendant's motion to reconsider. The court merged the aggravated battery counts into the attempted armed robbery count and, following a hearing, sentenced defendant to eight years in prison. The court denied his motion to reconsider sentence.

¶ 17 On appeal, defendant argues that the State failed to prove he had the specific intent to commit armed robbery.[2]

¶ 18 In reviewing a challenge to the sufficiency of the evidence, this court considers " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis

---

[2]Defendant also challenges the findings of guilt on the merged counts for aggravated battery, arguing that he acted in self-defense. Absent certain exceptions not applicable here, however, our review is limited to the convictions on which defendant was sentenced and does not encompass any convictions that were merged. *People v. Fort*, 2019 IL App (1st) 170644, ¶ 37.

omitted.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In a bench trial, "it is for the trial judge, sitting as the trier of fact, to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). We will reverse a conviction only where the evidence is so improbable, unreasonable, or unsatisfactory that a reasonable doubt of the defendant's guilt remains. *People v. Gray*, 2017 IL 120958, ¶ 35.

¶ 19    A person commits the offense of attempted armed robbery when, with the specific intent to commit an armed robbery, he does any act that constitutes a substantial step toward the commission of an armed robbery. 720 ILCS 5/8-4(a) (West 2022); *People v. Holmes*, 254 Ill. App. 3d 271, 276 (1993) (recognizing that " 'attempt' is a specific intent crime"). As charged, a person commits an armed robbery when he knowingly takes property from another by force or by threatening the imminent use of force, and while doing so, carries on or about his person or is otherwise armed with a dangerous weapon other than a firearm. 720 ILCS 5/18-1(a), 18-2(a)(1). (West 2022).

¶ 20    Defendant only challenges the sufficiency of the evidence showing that he acted with the specific intent to commit armed robbery. An individual rarely expresses his intent to commit a criminal offense and, therefore, intent is rarely proven by direct evidence. *People v. Lee*, 2015 IL App (1st) 132059, ¶ 53. Thus, the State may rely on circumstantial evidence to establish intent, which may be inferred from the conduct of the defendant and the surrounding circumstances. *People v. Terrell*, 99 Ill. 2d 427, 431-32 (1984).

¶ 21    Here, taking the evidence in the light most favorable to the State, we find that a rational trier of fact could find defendant guilty beyond a reasonable doubt of attempted armed robbery.

There is no dispute that defendant took items from the convenience store's shelf, placed them in his bag, and attempted to leave the store. There is also no dispute that defendant possessed a screwdriver, tire iron, and knife when he entered the store. Alsheikh testified that defendant had the store's property in the bag, did not return the property when requested, and threatened to stab Alsheikh. After defendant's threat of force, Alsheikh grabbed and wrestled with defendant, who repeatedly stabbed Alsheikh with a knife. Based on this evidence, a rational trier of fact can reasonably infer from defendant's conduct and the surrounding circumstances his specific intent to commit the armed robbery and conclude that the evidence was sufficient to prove defendant guilty beyond a reasonable doubt. *People v. Hall*, 194 Ill. 2d 305, 332 (2000).

¶ 22    Defendant nevertheless asserts that the State did not prove his specific intent to commit attempted armed robbery where he only intended to commit retail theft. Defendant argues that he possessed the screwdriver, knife, and tire iron for innocent purposes and his possession, therefore, was not indicative of his specific intent to commit armed robbery. This, however, is not an inference that the trial court was obliged to make. *People v. Smith*, 2014 IL App (1st) 123094, ¶ 13. "[T]he trier of fact is not required to disregard inferences which flow normally from the evidence and to search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *Hall*, 194 Ill. 2d at 332.

¶ 23    Defendant asserts the surveillance video and Alsheikh's testimony show that defendant did not display the knife until he was forced to defend himself. Attempted armed robbery, however, may also be committed by threatening the imminent use of force. Here, defendant threatened the imminent use of force when he told Alsheikh, "I'm finna stab you," while possessing a knife, screwdriver, and tire iron.

¶ 24    Defendant also contends that he lacked the specific intent to commit attempted armed robbery because he only stabbed Alsheikh in self-defense after Alsheikh "jumped" him from behind and put him in a "choke hold." As noted, however, defendant threated to stab Alsheikh before Alsheikh grabbed defendant. In any event, self-defense is not available to a person who "[i]s attempting to commit, committing, or escaping after the commission of, a forcible felony." 720 ILCS 5/7-4(a) (West 2022). As this court has explained, attempted armed robbery is an inherently forcible felony. *People v. Brown*, 2017 IL App (1st) 150146, ¶¶ 19-22 (analyzing attempted armed robbery as an inherently forcible predicate felony for purposes of the armed habitual criminal statute).

¶ 25    Viewing all the evidence in the light most favorable to the State, as we must, we cannot say that the evidence was so unsatisfactory, improbable**,** or implausible that it raises a reasonable doubt as to defendant's guilt of attempted armed robbery. *Gray*, 2017 IL 120958, ¶ 35.

¶ 26    For the forgoing reasons, we affirm the judgment of the circuit court.

¶ 27    Affirmed.